IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMIE JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15−cv−00105−SCW |
| | ) |
| WEXFORD HEALTH | ) |
| SOURCES, INC. et al | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Plaintiff brings this civil suit pursuant to 42 U.S.C. § 1983, for the deprivation of his constitutional rights while he was an inmate at Shawnee Correctional Center ("Shawnee") in Vienna, Illinois. Plaintiff claims that in early 2013, he was provided inadequate medical care causing him pain and suffering. Plaintiff alleges that Defendant Dr. David denied and delayed medical care for his gastrointestinal bleed for the two weeks between being admitted to the Shawnee infirmary and being sent to Herrin Hospital. Plaintiff further claims that Defendant acted with deliberate indifference in denying prescribed follow-up care after a blood transfusion and polypectomy and that this denial and delay resulted in unnecessary and avoidable physical pain and emotional injuries. As an initial matter, This Court **GRANTS**

Plaintiff Jimmie Jordan's Motion to Dismiss all claims against Defendants Dr. David Haymes and Wexford Health Sources, Inc. with prejudice. (Doc. 49). As such, the only remaining claims are against Defendant David.

This matter is before the Court on Defendant David's Motion for Summary Judgment (Doc. 39). A response has been filed and the motion is ripe for disposition. For the reasons stated below, Dr. David's Motion for Summary Judgment is **GRANTED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation omitted) (citing FED. R. CIV. P. 56(a)).** *See also Ruffin-Thompsons v. Experian Info. Solutions, Inc.***, 422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of genuine issue of material fact. *Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth facts showing that there is no genuine issue for trial." *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56 (e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson***, 477 U.S. at 248;** *Balance v. City of Springfield, Ill. Police Dep't***, 424 F.3d 614, 616 (7th Cir. 2005);**

*Hottenroth v. Vill. of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** The non-moving party "must create more than mere doubt as to the material facts and will not prevail by relying on a mere scintilla of evidence to support its position." *CAE, Inc. v. Clean Air Eng'g, Inc.*, **267 F.3d 660, 677 (7th Cir. 2001) (internal citations and quotations omitted).** An opposing party will only succeed "when they present definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, **233 F.3d 432, 437 (7th Cir. 2000) (internal citations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** In doing so, the court will "draw all reasonable inferences in favor of the non-movant." *Id.* Even if the facts are not in dispute, "[s]ummary judgment is inappropriate when alternate inferences can be drawn from the available evidence." *Spiegla v. Hull,* **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d 961 (7th Cir. 2007).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

## FACTUAL BACKGROUND

A few days prior to January 15, 2013, Plaintiff began noticing blood in his stool. While he felt no physical pain, he became concerned about the cause of the blood. Plaintiff went to the health care unit on January 15, 2013 complaining of blood in his stool and vomit. (Doc. 41-31, p. 19-22). At that time, Plaintiff was admitted to stay at the Shawnee infirmary for a 23-hour observation. (Doc. 41-6, p. 7-8). Plaintiff saw

3

Defendant David on January 16 and again on January 17, 2013. (Doc. 48-1, p. 1). On January 17, Defendant David told Plaintiff that a referral to an outside specialist was not appropriate since Plaintiff's bleeding condition could be handled within the prison. (*Id.*). Medical records show that at that time Dr. Haymes, another doctor at Shawnee, did not approve of Plaintiff seeing a gastroenterologist. (Doc. 41-8, p. 11). Without knowing of the disapproval, a nurse scheduled Plaintiff to see Dr. Tibrewala, a gastroenterologist, and then cancelled after seeing the medical records denying the appointment. (Doc. 41-9, p. 1).

Plaintiff remained in the infirmary, and each time Plaintiff noticed bleeding, he notified nurses, who then made notes about his continued rectal bleeding and bloody stools. (Doc. 41-9, p. 1-13). While in the infirmary that week, Plaintiff received milk of magnesia and Metamucil for his symptoms, but continued to bleed. (Doc. 41-31, p. 23). Additionally, nurses regularly monitored him and drew blood. (Doc. 41-32, p. 25). During that time, Plaintiff complained to the nurses and to Defendant David that the milk of magnesia and Metamucil were not alleviating the bleeding. (Doc. 48-1, p. 2). On the morning of January 23, 2013, a doctor at the infirmary recorded that Plaintiff would be referred to a gastroenterologist. (Doc. 41-10, p. 6). By 2pm the same day, the doctor had presented the referral to the review board and the gastroenterologist appointment was approved. (Doc. 41-10, p. 8). In the time between the approval and the appointment scheduled with Dr. Tibrewala on January 28, Plaintiff remained in the infirmary and continued to bleed. (Doc. 41-10, p.8-13; Doc. 41-11, p. 1-13).

On January 23, just prior to Plaintiff's appointment with Dr. Tibrewala, Union County Hospital reported a "critical lab" on Plaintiff's hemoglobin levels. (Doc. 41-12, p. 2). Plaintiff was transferred to Herrin emergency room for evaluation. (Doc. 41-12, p. 3). At Herrin, Plaintiff received two units of blood for anemia secondary to gastrointestinal blood loss. (Doc. 41-28, p. 11-12). In addition to the blood transfusion, Plaintiff received a colonoscopy, an EGD, and a polypectomy. (Doc. 41-28, p. 11). Plaintiff continued to bleed a small amount, but no other sources of bleeding were found. Plaintiff was not told that he had a gastrointestinal bleed secondary to internal hemorrhoids. (Doc. 41-32, p. 10). After the procedures, Plaintiff was kept overnight for observation, then discharged with a follow-up appointment with a neurologist, gastroenterologist, orthopedist, and a primary care physician. (Doc. 41-28, p. 11-12). The Herrin discharge records instructed Plaintiff to not miss follow-up appointments and listed an appointment with Dr. Tibrewala on February 7, 2013. (Doc. 41-30, p. 9- 10).

When Plaintiff returned from Herrin, he was taken to the Shawnee infirmary for observation. Plaintiff states that he continued to have "intense discomfort and pain" as a result of the colonoscopy and polypectomy. (Doc. 48-1, p. 3). Nurses noted that Plaintiff still had blood in his stools and was having difficulties and pain voiding. (Doc. 41-12, p. 4). Defendant David was notified of Plaintiff's pain, and Plaintiff was given Tylenol. (*Id.* at 9). Plaintiff continued to receive milk of magnesia and Metamucil along with his regular medications. (*Id.* at 4). Security told one of the nurses at the Shawnee infirmary that Plaintiff was to see Dr. Tibrewala on January 31. After a nurse relayed that information to Defendant David, Dr. David said that he was unaware of any reason

to send Plaintiff to Dr. Tibrewala for a follow-up at that time. (Doc. 41-12, p. 5-6). For weeks after being discharged from Herrin, Plaintiff remained in the Shawnee infirmary and continued to experience pain following his colonoscopy and polypectomy. (Doc. 41-32, p. 22-23).

Plaintiff was finally released from the Shawnee infirmary at the end of February, after a few weeks of observation. (Doc. 41-14, p. 14). After that, he continued to request but not receive follow-up appointments with a specialist. (Doc. 41-32, p. 16). Plaintiff suffered from intermittent bleeding and continued to experience episodes of dizziness on and off while at Shawnee. (Doc. 41-32, p. 17-18). Plaintiff was released from Shawnee Correctional Center in May of 2014. (Doc. 41-31, p. 11). He filed this lawsuit on January 30, 2015. (Doc. 1).

**LEGAL STANDARDS**

**A. Eighth Amendment Deliberate Indifference**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009).** A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir.2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") ((internal quotation marks omitted) (emphasis added). Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, 414 F.3d at 652-53.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Presenting

"evidence that *some* medical professional would have chosen a different course of treatment" is not enough to prove a constitutional violation. ***Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016),** *as amended* **(Aug. 25, 2016)**. "But when a plaintiff provides evidence from which a reasonable jury could infer that the defendant doctor disregarded rather than disagreed with the course of treatment recommended by another doctor, summary judgment is unwarranted." ***Zaya v. Sood*, 836 F.3d 800, 803 (7th Cir. 2016)**.

Finally, "[s]omething more than negligence or even malpractice is required" to prove deliberate indifference. ***Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014);** *see also Hammond v. Rector*, **123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish Eighth Amendment deliberate indifference").** Further, merely reiterating the medical malpractice standards does not prove deliberate indifference, instead the treatment must *substantially* deviate from "accepted medical practice." ***Whiting v. Wexford*, 839 F.3d 658, 663 (7th Cir. 2016).**

### B. Limitations Period

Section 1983 does not contain its own statute of limitations. "In order to determine the proper statute of limitations for § 1983 actions, a federal court must adopt the forum state's statute of limitations for personal injury claims." ***Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998).** The Seventh Circuit has held that in § 1983 cases brought in Illinois, the Illinois personal injury statute of limitations should apply. ***Id.;* 735 ILCS 5/13-202.** This two-year limitations period commences at the time of the

injury. **735 ILSC 5/13-202.** Therefore, a plaintiff has two years to file suit after the time the action accrues. *Ray v. Maher*, **662 F.3d 770, 773 (7th Cir. 2011).**

For an Eighth Amendment violation, the date of accrual is the defendant's refusal to treat the plaintiff. *Heard v. Sheahan*, **253 F.3d 316, 318 (7th Cir. 2001).** "Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff*, **258 F. App'x 3, 5–6 (7th Cir. 2007) (citing** *Heard v. Sheahan*, **253 F.3d 316, 318-19 (7th Cir. 2001)).** "[A]ll the pain after the date of onset…of deliberate indifference" is a continuance of the violation. *Id.* **(finding that a refusal to treat "continued for as long as the defendant has the power to do something about [the plaintiff's] condition, which is to say until [the plaintiff leaves] the jail" so suit brought two years after release was timely).**

## ANALYSIS

Based on the record presented to the Court, Plaintiff cannot recover from Defendant David as a matter of law. The Court finds it convenient to divide the facts into two time periods: (1) Plaintiff's initial stay in the Shawnee infirmary; and (2) his second stay in the Shawnee infirmary after his return from Herrin hospital. The Court addresses the second stay first.

The record fails to demonstrate deliberate indifference on the part of Defendant David for Plaintiff's second stay in the Shawnee infirmary. During this stay, Plaintiff was receiving treatment from Shawnee medical staff, including Defendant David, and all indications are that Plaintiff was recovering during this time and later recovered.

Plaintiff experienced less bleeding after returning from Herrin, and though he experienced some pain while in the infirmary, he was provided with Tylenol to relieve the pain. Further, the presence of pain is not itself sufficient to demonstrate deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

While Defendant David did not send Plaintiff to his follow-up appointment with Dr. Tibrewala, the record indicates that Dr. David's decision was based on his observation that there was no need to send Plaintiff to see Tebrewala. In other words, Defendant David disagreed with the discharge instructions that it was necessary for Plaintiff to have a follow-up with Tibrewala at that time. The fact that Dr. David disagreed with the discharge instructions is not itself indicative of deliberate indifference. Evidence that a different medical professional would have chosen a differing course of treatment is not itself sufficient to prove a constitutional violation. *See Petties*, 836 F.3d at 729. Rather, there must be evidence to allow a jury to infer that there was no exercise of professional judgment involved in the physician's decision. *Zaya*, 836 F.3d at 805.

Here, Defendant David's decision not to send Plaintiff to his follow-up is unlike other cases where courts have held that summary judgment was not appropriate where a physician did not follow another physician's instructions. Take *Zaya v. Sood*, for instance. There, an inmate suffered a broken wrist, and the prison physician did not follow the orthopedic surgeon's instructions that the inmate be sent to see the specialist

for a follow-up in three weeks. **836 F.3d at 803**. Instead, the prison physician waited seven weeks to send the inmate back to the specialist, thereby resulting in the need for surgery, and the Seventh Circuit found that a jury could infer from the evidence that the physician was deliberately indifferent. *Id.* Unlike the suit at-bar, however, in *Zaya*, the specialist did not simply direct that the inmate see him again in three weeks; rather, the specialist also explained the risks involved with a further delay of a follow-up. *Id.* **at 806**. In addition, the inmate in *Zaya* presented expert testimony from another physician, who opined that it was unreasonable for the prison physician to disagree with the orthopedic surgeon in that instance. *Id.* **at 807**. The Seventh Circuit therefore found that a reasonable jury could infer from the expert's testimony that the prison physician did not actually disagree with the specialist's instructions, and, rather, disregarded them. *Id.* There is no similar expert testimony that would allow a jury to make a similar inference in this matter, however. Finally, while it was clear in *Zaya* that the physician's decision not to send the inmate to a follow-up with the specialist led to the need for surgery, here, there is no indication that Plaintiff suffered negative consequences from not being sent to his follow-up appointment. Rather, the record indicates that Plaintiff was recovering at the time, and eventually recovered from his ailments.

Though Plaintiff may not have been satisfied with the treatment he received from Defendant David upon his return from Herrin Hospital, he is not entitled to demand specific care. *Forbes*, **112 F.3d at 267.** Rather, Plaintiff was entitled to "reasonable measures to meet a substantial risk of serious harm," *Id*, and there is

simply not sufficient evidence in the record to allow a reasonable jury to infer that Defendant David did not employ such reasonable measures after Plaintiff's return to Shawnee from Herrin.

As for Plaintiff's initial stay in the infirmary up until the time he was taken to Herrin, even if that Defendant David was deliberately indifferent during that time period, Plaintiff's claims during that period are nonetheless barred by the statute of limitations. Plaintiff's initial stay in the infirmary lasted from January 15, 2013 to January 28, 2013. Any deliberate indifference by Defendant David ended when Plaintiff was sent to Herrin Hospital on the 28th. Plaintiff filed suit on January 30, 2015. Since Illinois' statute of limitations for personal injury is two years, any claims prior to January 30, 2013 are barred.

Plaintiff argues that his claims prior to January 30, 2013 are not barred because they are part of a continuing violation of his rights by Defendant that extended after the limitations period. Plaintiff argues that case law in Illinois establishes that the limitations period does not begin to run until the final tortious act of a course of improper medical treatment with cumulative effects. Regardless of the merits of Plaintiff's argument, this Court has already found that there is insufficient evidence of deliberate indifference occurring during Plaintiff's return to the infirmary within the limitations period. Therefore, Plaintiff's claims against Defendant David for his initial stay in the Shawnee infirmary up to January 28, 2013 are barred by the statute of limitations.

## CONCLUSION

Based on the record presented to the Court, Plaintiff cannot recover on his claims against Defendant David. No reasonable jury could find that Defendant was deliberately indifferent toward Plaintiff's serious medical needs during Plaintiff's stay in the Shawnee infirmary upon his return from Herrin Hospital, and Plaintiff's claims relating to his initial stay in the infirmary before he was sent to Herrin are barred by the statute of limitations. Therefore, Defendant David's Motion for Summary Judgment (Doc. 41) is **GRANTED**. Plaintiff's claims against Defendant David are **DISMISSED with prejudice**. Additionally, Plaintiff's Motion to Dismiss Defendants Wexford and Haymes (Doc. 49) is also **GRANTED**. Plaintiff's claims against Defendants Wexford and Haymes are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATED: 9/22/2017

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge